IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2026

## XAVIER YOUNG v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 20-01193    James Jones, Jr., Judge
_____

### No. W2025-01639-CCA-R3-PC
_____

The Petitioner, Xavier Young, appeals the Shelby County Criminal Court's denial of post-conviction relief from his guilty plea to one count of carjacking. The Petitioner argues that he received ineffective assistance of counsel and that his guilty plea was unknowing and involuntary. We affirm the judgment of the post-conviction court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JILL BARTEE AYERS and JOHN W. CAMPBELL, SR., JJ., joined.

Rosalind Elizabeth Brown (on post-conviction and appeal), Memphis, Tennessee; John McNeil (at guilty plea and sentencing), Memphis, Tennessee, for the appellant, Xavier Young.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Samuel D. Winnig, and Caleb Sanders, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The Shelby County Grand Jury indicted the Petitioner for carjacking and employment of a firearm with the intent to commit a felony. Thereafter, the Petitioner and the State entered a plea agreement, whereby the Petitioner agreed to plead guilty to the carjacking offense and would be sentenced as a mitigated offender to seven years, two months, and twelve days at seventy-five percent, and the State agreed to dismiss the employment of a firearm charge.

At a hearing on June 21, 2022, the State informed the trial court that the Petitioner had a "collective issue warrant out of Mississippi" and sought guidance from the court about whether the case in Tennessee or Mississippi would be resolved first. The trial court said it was aware that the defense had received new evidence from the State at the last minute. It also said it was going to revoke the Petitioner's bond with the hope that the instant Tennessee case would be resolved first. The State explained that it had offered the Petitioner "7.2 years" for his guilty plea to carjacking and entry of a nolle prosequi on his employment of a firearm charge. The trial court questioned whether the Petitioner's carjacking offense would be eligible for probation, and trial counsel said he would research the issue carefully. The court asserted that before it accepted the Petitioner's plea, it wanted the Petitioner to know whether he had "a chance of probation" because the Petitioner's decision needed to be an "informed one." The trial court then revoked the Petitioner's bond.

**Plea Submission Hearing.** At the June 22, 2022 plea submission hearing, the State provided a recitation of the facts supporting entry of the Petitioner's guilty plea to the carjacking offense:

[T]he facts would have shown that on July the 29th [sic] of 2019, MPD officers responded to a carjacking at 1025 East E.H. Crump. [The v]ictim, Christopher Mendoza Rosales, advised that he placed his white Dodge Charger for sale on Craigslist. Victim advised he was contacted by a male who identified himself as Derek Coleman and later [was] identified as [the Petitioner] regarding the vehicle. The victim advised he agreed to meet [the Petitioner] at the Southgate Shopping Center located on South Third Street. Victim advised that he and two friends, Derek Delph and Carlo Johnson, met [the Petitioner] and his friend, later identified as Jarvis Mimes (phonetically spelled), at the shopping center.

Victim advised that [the Petitioner] asked to test drive the vehicle. The victim advised that as he approached E.H. Crump, [the Petitioner] pulled out a black handgun, pointed it at him, and stated, so what we gonna do? Victim advised he jumped out of the vehicle and ran as the vehicle continued northbound on South Third.

Mendoza Rosales advised he called Delph and Johnson and advised them that . . . he had been robbed. Victim advised that Delph and Johnson picked him up and they began following Mimes who was occupying a gold 2001 Chevrolet Tahoe. Victim advised that they followed Mimes to 909 College Park when he was then arrested by police.

Christopher Mendoza Rosales provided a typed statement and pos[itively] identified [the Petitioner] from a lineup as the person who carjacked him. Delph and Johnson also provide statements and pos[itively] identified [the Petitioner] as the person [who] left with Rosales in the vehicle.

The Petitioner then stipulated that there was a factual basis to support his guilty plea.

During the plea colloquy, the Petitioner assured the trial court that he understood that he had an absolute right not to plead guilty and to have a jury trial, where he could cross-examine the State's witnesses, call witnesses of his own, testify on his own behalf, or not testify and have the jury instructed that it could not hold his failure to testify against him.

The trial court informed the Petitioner that he was charged with carjacking, which carried eight to thirty years at seventy-five percent, and employing a firearm during a felony, which carried a consecutive sentence of six years at one hundred percent. The court stated that pursuant to the Petitioner's guilty plea, the State was dismissing the firearm charge and allowing him to plead guilty to the carjacking offense as a mitigated offender and to be sentenced to seven years, two months, and twelve days with a release eligibility of seventy-five percent. The trial court informed the Petitioner that there would be a hearing in the future to determine the manner of service of his sentence. The court added:

> [S]tarting July 1st, this [carjacking] offense is not probatable. But because it was committed in your case when it was probatable, you have the . . . opportunity to ask for a suspended sentence. That doesn't mean you'll necessarily, get it or won't get it. But we will have a hearing, and I will consider all the statutory factors. And there will be a presentence report on all that.

The Petitioner affirmed that he understood.

At this hearing, the Petitioner confirmed that he was entering his guilty plea freely and voluntarily and that no one had threatened him or forced him to plead guilty. The Petitioner confirmed that he had fully discussed the plea agreement with trial counsel before deciding to plead guilty. When the trial court asked if the Petitioner had any questions about his guilty plea, the Petitioner said he did not.

At the conclusion of the hearing, the trial court found that the Petitioner's guilty plea was freely and voluntarily entered, that it was knowingly and intelligently made, and that the plea was free from threats or coercion. The court then accepted the Petitioner's guilty plea to carjacking as well as the plea agreement fixing his punishment at seven years,

two months, and twelve days at seventy-five percent. The trial court dismissed the firearm count and informed the Petitioner that his "probation hearing" would occur on July 21, 2022.

**Sentencing Hearing.** At the July 21, 2022 sentencing hearing, the trial court noted that the Petitioner had "holds on him from two other jurisdictions." Trial counsel responded that there was not a hold on the Petitioner from Texas, and the trial court asserted that there was a hold on the Petitioner from Rankin County, Mississippi. The State explained that Mississippi was "waiting to extradite [the Petitioner] for that indictment."

The Petitioner testified on his own behalf that he graduated from Tougaloo College in Jackson, Mississippi and owned his own moving company, which he started in 2015. He confirmed that he had no prior convictions. The Petitioner acknowledged that he took the car in the instant case but claimed that he was scared that the car's owner, Rosales, was going to take his money, which was why he "hollered at him and told him to get out [of the car]," and then parked the car down the road. The Petitioner admitted he "misjudged the situation." He asserted that he parked the car "four minutes down the road from the scene" and that Rosales kept the vehicle's key upon exiting the car.

On cross-examination, the Petitioner acknowledged that he falsely identified himself to Rosales as "Derrick Coleman" and created a different number than his real cell number to text with Rosales about the car. The Petitioner denied using his cell phone the day before the crime to search, "[H]ow to block vehicle GPS tracking." The Petitioner said that he could not recall searching, "[H]ow to drain a PayPal account" on July 17. He denied searching, "Robbery charges in West Memphis" on July 23 on his phone. The Petitioner acknowledged that he had a pending aggravated robbery charge in Dallas, Texas, and a stolen property charge in Rankin, Mississippi. The Petitioner denied having a gun during the incident in Rosales's car. When asked if he searched "BB Glocks and BB guns" and "phantom air pistols," the Petitioner admitted he was looking for something to protect himself but claimed he never purchased a gun.

The Petitioner's grandmother, Jacqueline Young, also testified on the Petitioner's behalf. She stated that the Petitioner was "like a caretaker" to her because she was in poor health. She described the Petitioner as "very smart" and a "good child." She also asserted that the Petitioner had never owned a gun and had never been convicted of a crime.

At the conclusion of the hearing, the trial court expressed its concern that although the Petitioner pled guilty to carjacking, he had disputed the elements of the carjacking offense. The court observed that the Petitioner had "a good background, education" and "family support" but concluded that it could not place him on probation because of the

- 4 -

Petitioner's pending cases in Mississippi and Texas, which would immediately violate his probation. However, the trial court offered the following compromise:

> I'm going to deny his petition [for probation] today. I'm changing on the judgment sheet the place of confinement to the Shelby County Correctional Center. And what I'm doing, Mr. Young, is trying to keep jurisdiction for this Court. I'm basically telling you in a round-about-way, get these other matters resolved. And I don't know how they're going to solve them. . . . [T]hey may be resolved some way that it doesn't matter whether you can get probation. They may be resolved favorably to you, in which case your attorney would want to come back before this Court and say, look, we now have all those things taken care of.
>
> And like I said, without those [pending cases in Mississippi and Texas], you present a pretty good petition [for probation]. . . . [Y]ou've got a family. You've got a job . . . no prior history. But right now, . . . if I granted you probation, they'd just take you to the other [jurisdictions] so I'm going to tell you to get your other matters taken care of and then come back before this Court when you're in a posture that you can go onto probation.

On July 27, 2023, the Petitioner filed a timely pro se petition for post-conviction relief and, following the appointment of counsel, filed four amended petitions, alleging, in pertinent part, that he was denied effective assistance of trial counsel and that his conviction was based on a guilty plea involuntarily entered without understanding of the nature and consequences of his plea.

**Post-Conviction Hearing.** The post-conviction hearings in this case occurred on March 14, 2025, and July 18, 2025. At the first hearing, the Petitioner testified on his own behalf, claiming that his guilty plea was unknowing and involuntary. He said that when he appeared at court on June 21, 2022, he expected trial counsel to make a motion to continue his trial because the State had just informed the defense that there was new evidence recovered from his cell phone, although he was never shown this new evidence. When the Petitioner appeared at the June 21, 2022 hearing, he was informed that he had an outstanding warrant from Mississippi that he never knew about.

The Petitioner said that at the June 22, 2022 hearing, he entered his guilty plea at the last minute, even though he had not received all the evidence in discovery against him. He claimed he was forced to accept the State's offer then or lose it. When he entered his guilty plea, it was "understood" that he would receive probation. He claimed that he was "new to court proceedings" and that he had "never been in trouble" and had "no juvenile history." He said he did not know he was going to enter a guilty plea ahead of time. The

- 5 -

Petitioner insisted that his plea agreement was supposed to grant him probation or diversion. Although he sent trial counsel an email asking for all the State's evidence against him prior to entering his plea, trial counsel replied that the cell phone at issue was still downloading information. The Petitioner claimed that although he wanted to see all the State's evidence against him prior to entering his guilty plea, he did not have an opportunity to see the "full evidence."

The Petitioner asserted that trial counsel did not know anything about his background at the time he entered his guilty plea. Although a presentence report was later done, this report was not completed prior to his entering the guilty plea. The Petitioner maintained that he was not informed of any consequences of entering his plea because of his background.

The Petitioner noted that the trial court first informed him that he was not eligible for probation, even though he was actually eligible. At his sentencing hearing on July 21, 2022, the trial court told him that he could only receive probation if he cleared up his outstanding warrants in Texas and Mississippi. He explained that he was unable to resolve these outstanding warrants because he was immediately incarcerated and because trial counsel did nothing to help him clear up these warrants. He claimed that after he was sentenced, trial counsel refused to communicate with him, and he had to file a complaint against trial counsel with the Board of Professional Responsibility. He then filed a pro se petition to clear up his warrants, but this petition was dismissed because he was incarcerated. He reiterated that trial counsel never informed him of the full evidence against him at the time he entered his guilty plea, never did a background report to inform him of the consequences of his guilty plea, and never helped him to resolve his outstanding warrants. For these reasons, the Petitioner asserted that he was asking the court to conclude that his guilty plea was not knowing or voluntary.

On cross-examination, the Petitioner stated that at the June 21, 2022 hearing, a sentence of probation was supposed to have been "understood" from the very beginning. He claimed he entered his guilty plea because trial counsel told him it was the "best" thing for him, and he trusted trial counsel. He admitted telling the trial court that he was entering his guilty plea freely and voluntarily but claimed that he was simply trusting trial counsel with his life.

The Petitioner denied ever trying to carjack Rosales's vehicle. Instead, the Petitioner said that Rosales tried to steal money from him during the test drive, that he pulled the car over and asked Rosales what he was doing, that Rosales stepped out of the car, and that the Petitioner stopped the car on Vance Avenue a few minutes later and left it there. The Petitioner stated that he later discovered he was charged with carjacking and employing a firearm during a felony. The Petitioner insisted that he never had a weapon

- 6 -

and that he never forced Rosales out of the vehicle. He acknowledged that the State found some searches on his cell phone that were incriminating, including some searches about the punishment for an aggravated robbery and about how to obtain a gun.

The Petitioner claimed he wanted to proceed to trial but entered his guilty plea to carjacking because trial counsel was not comfortable trying his case without all the State's evidence. He said trial counsel told him that it was best for him to plead guilty, and he trusted him. The Petitioner stated that he was not worried about the firearm charge because he never had a gun during the incident. He claimed he wanted a trial because he knew the things the State accused him of did not happen. The Petitioner admitted telling the court that he wanted to plead guilty, but he believed that "probation was already understood." He claimed he was surprised when the trial court set a sentencing hearing for him. However, the Petitioner admitted that the trial court told him he would have the opportunity to ask for a suspended sentence, but he might not receive it, and that he replied, "Yes, sir." He also admitted telling the trial court that his guilty plea was free and voluntary and that he had discussed his guilty plea with trial counsel before deciding to enter it. The Petitioner acknowledged that he did not ask the trial court any questions at the plea submission hearing, despite the trial court giving him the opportunity to do so. He reiterated that he entered his guilty plea because he believed he was going to get "diversion or probation" and was tired of the case dragging on. The Petitioner insisted that he was "misguided on the plea" and entered his plea "under duress" because of the outstanding warrants he knew "nothing about."

The Petitioner claimed that trial counsel should have done more for him because he "ended up in prison" and did not have the opportunity to be on probation like everybody else who did not have a criminal history. He admitted he still would have entered his guilty plea to 7.2 years at seventy-five percent if he could have been guaranteed probation. However, he also claimed he "wanted to go to trial" but admitted it would have been "dumb" to go to trial without receiving all the evidence from the State. He claimed he still had not seen all the evidence against him. When the State asked the Petitioner what he wanted out of this case, the Petitioner repeatedly stated that he wanted "diversion."

On redirect examination, the Petitioner reiterated that his guilty plea was not knowing and voluntary and that he had not received full discovery when he entered his plea. He also asserted that he and trial counsel did not have time to prepare for trial and that trial counsel never explained what would happen if he entered his plea.

The trial court informed the Petitioner that if he received post-conviction relief, his case would start over, he would not be guaranteed probation from the State, and he could receive anywhere from fourteen to eighteen years in prison for his charges. The Petitioner acknowledged that under his current plea agreement, he would be up for parole in

November of the current year and that if the trial court granted his post-conviction petition, he would not be up for parole. The trial court made it clear that even if it granted the Petitioner post-conviction relief and the State offered to give him probation, the trial court could not sentence him to probation while the Petitioner had "active cases in another court."

Although the trial court gave the Petitioner several months to consider whether he wanted to withdraw his post-conviction petition, when the parties returned to court for the July 18, 2025 hearing, the Petitioner confirmed that he wanted to move forward with his petition for post-conviction relief.

At July 18, 2025 hearing, the Petitioner again took the stand. He testified that when he appeared at the June 21, 2022 hearing, he expected trial counsel to make a motion to continue his trial because the State had just discovered new evidence on his cell phone. He said trial counsel sent him an email stating that data from his cell phone had been downloading for three days and that he would review the evidence before he and the Petitioner talked about what to do in his case. Trial counsel also informed him that he had discovered a police report from Rankin County, Mississippi, charging the Petitioner with possession of stolen property, which was unrelated to his Tennessee case. The Petitioner said he had not been previously aware of this Mississippi warrant, despite being stopped two or three times as a part of his moving business. He confirmed that as of his June 21, 2022 scheduled trial date, he had not received all the discovery from the State.

The Petitioner asserted that on June 21, 2022, he did not go to trial and was incarcerated because of the outstanding Mississippi warrant on the possession of stolen property charge. He returned to court the next day, June 22, 2022, and pled guilty to the carjacking charge because trial counsel told him it was in his best interest to accept the State's offer. He said he had told trial counsel in emails that he would only plead guilty if he could receive probation.

The Petitioner said that he never met with trial counsel to prepare for trial and only met with trial counsel in person one time, although he said they communicated via email. Although he received some discovery, the Petitioner stated that he never received the discovery related to the evidence on his cell phone.

The Petitioner confirmed that when he entered his guilty plea, he understood that he would receive diversion. He said that on June 21, 2022, he did not know he was ineligible for probation if he had an outstanding warrant, and he claimed he first became aware of that fact at the sentencing hearing when it was explained to him. The Petitioner confirmed that his presentence report was not completed before he entered his plea. He also affirmed that on the day he entered his guilty plea, he had no information about whether he was

eligible for probation or diversion, which meant that he did not have all the information to make a knowing and voluntary decision about his plea.

The Petitioner acknowledged that the trial court denied him probation at his sentencing hearing on July 21, 2022, because of his outstanding warrants in other states. He recalled the court telling him that if he resolved these outstanding warrants and returned to court, it would allow him to petition for a suspended sentence, although he did not completely understand what the trial court was saying. The Petitioner stated that trial counsel never helped him to check on his outstanding warrants and never contacted him after he entered his guilty plea, although the Petitioner reached out to him. He ended up drafting a pro se motion to request probation and sent it to trial counsel. The Petitioner asserted that trial counsel never informed him that once he was moved to the Department of Correction, the trial court no longer had jurisdiction over him.

The Petitioner asserted that he entered his guilty plea because he believed he had "guaranteed probation." He claimed he never would have entered his plea if he had known probation was a "gamble." He said that he had been unable to resolve his outstanding warrants because of his incarceration.

On cross-examination, the Petitioner admitted that the day he entered his guilty plea, the trial court informed him that probation was not guaranteed. He claimed that trial counsel never talked to him about all the evidence against him, which prevented him from making an informed decision to plead guilty. He asserted that if he had seen all this discovery, he would have proceeded to trial.

On redirect examination, the Petitioner reiterated that his emails showed that he told trial counsel that he only wanted to enter a guilty plea if he was guaranteed probation. He also asserted that trial counsel never informed him that his guilty plea did not guarantee him probation. The Petitioner confirmed that at the time he entered his guilty plea, his presentence report had not been completed, and trial counsel had not searched whether he was eligible for probation and had not provided any information concerning his outstanding warrants. He claimed that trial counsel did not try to help him until he filed a pro se Rule 35 motion for the reduction of his sentence, which was ultimately dismissed. He also reiterated that he did not understand the consequences of his guilty plea.

In response to questioning from the trial court, the Petitioner admitted that the trial court informed him at his plea submission hearing that he would have "the opportunity to ask the Court for a suspended sentence" and that this did not mean that would get or would not get a suspended sentence. However, he claimed that he did not understand what the trial court meant about probation. He admitted he should have asked questions at the plea submission hearing when the trial court gave him the opportunity. The trial court reminded

the Petitioner that if it granted post-conviction relief, he could receive a maximum of eighteen years in confinement, and the Petitioner again confirmed that he wanted to move forward with his post-conviction petition.

Trial counsel also testified at this hearing, asserting that he spoke to the Petitioner at "every court date" and met with him in his office "two or three times." He also said he met with the Petitioner and his witness, Jarvis Mimms, a week or two before the scheduled trial date. Trial counsel recalled receiving a call from the prosecutor in mid-June 2022, who explained that new evidence had been downloaded from the Petitioner's phone. Trial counsel told the Petitioner that he was going to refuse to go to trial on June 21, 2022, because he did not have all the discovery. Trial counsel met with the prosecutor a few days before the trial date to review the newly discovered evidence on the Petitioner's phone, which was "very bad" for him. He said that on the day of or day before the carjacking incident there was a Google search on the Petitioner's phone asking, "[H]ow much time you can get for armed robbery in Tennessee[?]" The Petitioner's phone also had searches just prior to the incident asking, "[W]here you can buy a fake gun that looks real[?]"

Trial counsel confirmed that the phone belonged to the Petitioner based on the other messages and the location data showing the Petitioner had this phone in his possession before the offense. He then called the Petitioner and told him the incriminating things the State had found on his phone. He agreed that the Petitioner never physically saw the phone extraction data. Trial counsel stated that he told the Petitioner on June 20, 2022, that there was no way the trial court would make them go to trial the next day because the Petitioner's phone had been downloading data for three days and still was not finished.

Trial counsel said he was not aware that the Petitioner believed that if he took the plea he would receive probation. He asserted that he explained the consequences of entering a guilty plea to him. When asked if he completed a presentence report before the Petitioner pled guilty, trial counsel replied, "I don't remember if it was the . . . Monday that it was supposed to be set for trial that he walked in and had a warrant from Mississippi, but . . . at some date prior to his sentencing, we entered a presentence report."

Trial counsel acknowledged that neither he nor the Petitioner were aware that he had an outstanding Mississippi warrant before they were notified about it in court. He said the Texas case and the Mississippi case were related because the Petitioner was charged with an alleged carjacking in Texas and then was pulled over in the car in Mississippi. He acknowledged that at the time of the Petitioner's case, the Petitioner had not been convicted of the charges in Texas or Mississippi.

Trial counsel did not recall telling the Petitioner that Detective Cody Hamilton from Mississippi was going to come to Tennessee and testify against him. He knew the

prosecutor was in contact with someone from Mississippi, but he was unsure whether that detective was going to testify at sentencing or at trial.

Trial counsel asserted that the Petitioner had no expectation of going to trial on June 21, 2022, and that he and the Petitioner believed that they would be getting a trial continuance in light of the new phone evidence. On June 21, 2022, the Petitioner walked in the courtroom and was taken into custody for the outstanding warrants. When asked if the Petitioner got the chance to try to resolve these outstanding warrants, trial counsel said, "We both learned he had warrants the day we walked into court."

On cross-examination, trial counsel stated that the Google searches on the Petitioner's phone helped the State prove the element that the Petitioner was denying, that he had a gun at the time of the incident. After learning of this incriminating evidence on this phone, the Petitioner decided to accept the State's favorable plea offer rather than going to trial, which was why they set the case for the next day, June 22, 2022, for the Petitioner to enter his guilty plea. He noted that the State's offer would have expired right around when the Petitioner entered his guilty plea. He talked to the Petitioner in person about the incriminating evidence on his phone; the Petitioner never denied that the phone belonged to him and that he was the one using it. Trial counsel noted that if the Petitioner had denied that it was his phone, denied the evidence on the phone, or had demanded to physically see all the evidence, then he would have gotten an investigator to examine the phone so he could have shown the Petitioner the data extraction prior to entering his guilty plea.

Trial counsel said that because of the date of the Petitioner's carjacking offense, he could ask the trial court for probation. However, the trial court announced that it would consider probation for the Petitioner after entry of a presentence report and a hearing on the matter, which the transcript showed. Trial counsel acknowledged that if there had been an agreement regarding probation, the parties would not have needed to continue the case for a hearing on July 21, 2022. He said the Petitioner never asked why he was not on probation after entering his guilty plea because he understood that his case had been continued for a hearing on whether he would be granted probation.

On redirect examination, trial counsel denied only meeting with the Petitioner one time. He believed the Petitioner did not receive probation because of his outstanding warrants. However, the trial court told the Petitioner that if he could clear up those outstanding warrants, he could file a petition to suspend the remainder of his sentence, and the trial court would consider the petition. Trial counsel said that as soon as the trial court informed the Petitioner of this, he knew that resolving these outstanding warrants would be "impossible" because his sentence would put him in the Department of Correction, and the trial court would lose jurisdiction of the case.

Trial counsel acknowledged that the Petitioner entered his guilty plea before he had a presentence report. When asked if he requested diversion, trial counsel said that he did not believe the Petitioner's carjacking offense was eligible for diversion, and even if it had been, he did not believe the State's offer included the Petitioner asking for diversion. He agreed that the Petitioner did not see the entire data extraction from his phone, but he believed that he had shown the Petitioner a "printout of selected text messages and Google searches" that the prosecutor had given him. He recalled bringing this printout to court either on June 21, 2022, or June 22, 2022, when the Petitioner entered his guilty plea.

Post-conviction counsel asked, "Isn't it true the only way [the Petitioner] can make a knowing and voluntary plea is if he has all the information that has been given to you, and he get[s] to see it?," and trial counsel replied,"[I]f [the Petitioner] had demanded to see his entire phone extraction, we absolutely would have done that before we entered any plea, but he had seen enough, and I had seen enough [evidence from the phone] to advise him that trial was a very, very bad idea, and [the Petitioner] understood that."

On recross-examination, trial counsel said he was able to see the data extraction from the Petitioner's phone either the morning of court on June 21, 2022, or perhaps right after court on that date. He acknowledged that the June 21 court date was when the Petitioner went into custody on the warrants from Mississippi. Trial counsel stated that although the trial court had initially given the parties a report date of July 20, 2022, to pick a new trial date, the Petitioner decided that he wanted to accept the State's offer, which was why they continued the case to the June 22, 2022, for the Petitioner to enter his guilty plea.

After this hearing, the post-conviction court entered a written order denying post-conviction relief. The trial court did "not find the Petitioner's testimony to be credible that trial [counsel] withheld evidence or discovery from the Petitioner or misrepresented the information obtained." However, the court determined that trial counsel was "credible regarding the conversations between himself and the Petitioner." The trial court determined that based on the Petitioner's own testimony, the outstanding Mississippi warrants and the contents of the Petitioner's phone would have made the Petitioner's defense at trial "substantially . . . more difficult." It specifically noted trial counsel's testimony that the Petitioner never denied the incriminating evidence the State found on the phone or that he was the one who had used the phone. Regarding the Petitioner's claim that trial counsel failed to fully explain the State's offer to him, the post-conviction court held:

> The fact that trial counsel was able to secure a deal that got the employment
> of a firearm charge, a charge that requires consecutive time served at 100%,
> dismissed and on top of that, a mitigated offer of 7.2 years instead of the

Range I minimum for carjacking of 8 years, further illustrates [trial counsel's] competence and capabilities, as well as his familiarity with the case. The Court does not believe that [after] trial counsel secured that offer, that he would not have reviewed the offer and discussed the exposure at trial.

As for the Petitioner's claim that his plea was not voluntary because trial counsel erroneously told him he was guaranteed probation, the post-conviction court found that the guilty plea transcript, which clearly established that probation was not guaranteed, did not support this claim. The post-conviction court also found that there had been "nothing presented" at the post-conviction hearing to support the Petitioner's claim that "probation was anything more than a possibility."

Regarding the Petitioner's claim that trial counsel was ineffective in failing to obtain a presentence report prior to the date of his guilty plea, the post-conviction court found that it did "not appear from the record or testimony in this hearing that the [Petitioner] was interested in accepting the offer the [S]tate presented and therefore there would be no need for a presentence report until, and unless, the [Petitioner] was convicted by a jury of his peers." The court noted that "[e]ven if trial counsel should have obtained a presentence report prior to [entry of the Petitioner's guilty plea], the failure in doing so . . . did not prejudice the defendant." The post-conviction court added:

A [sentencing] hearing was held and the trial court learned of a warrant in a jurisdiction outside of Tennessee. The trial court explained to the Petitioner, at that time, that the trial court would grant his petition to suspend [the] rem[a]inder of [his] sentence upon clearing up the warrant situation in Mississippi. Had there been any evidence that not obtaining the presentence report prior to that day . . . affected the outcome of the hearing, there is no prejudice to the [Petitioner]. In this case, the trial court granted his petition [for probation] on the condition that the warrants be cleared up, which to date, has not been done.

As for the Petitioner's assertion that his trial counsel was ineffective in not clearing up the warrant issue in Mississippi, the post-conviction court found that this was an inappropriate claim for post-conviction relief because this would "pertain to a breach of contract [issue] if, in fact, the [the Petitioner's trial] attorney was even retained to perform said task in another state." The post-conviction court asserted that the outstanding Mississippi warrants were a "separate collateral issue" that did "not fall within the scope of representation on this matter." Noting that the Petitioner questioned the validity of the Mississippi warrants because he had not been served with them and had not been taken to Mississippi to address them, the post-conviction court said it was "a well-known practice for outside jurisdictions to simpl[y] place holds on individuals until their case is complete"

and, at that time, "serve[] their warrant and extradite[] the individual to their respective jurisdiction to address the issue."

Regarding the Petitioner's claim that trial counsel was ineffective in failing to inform him that the trial court would lose jurisdiction upon the Petitioner service of his sentence at the Tennessee Department of Correction, the post-conviction court held that if the Petitioner had "cleared up the warrants as advised by the trial court" and attempted to get back into the trial court for a hearing on a petition to suspend the remainder of his sentence, but his petition was denied for the lack of jurisdiction, then the post-conviction court could have "further entertain[ed] this issue to determine its validity." The post-conviction court held that because the Petitioner had "yet to clear up the warrants," any error made by trial counsel regarding this issue did not result in prejudice to the Petitioner. The post-conviction court also surmised that this post-conviction petition was "merely the Petitioner's attempt to circumvent the condition [of resolving the outstanding Mississippi warrants] imposed by the trial court[.]"

It is from this order that the Petitioner now appeals.

## ANALYSIS

The Petitioner argues the post-conviction court erred in denying his petition for relief. Specifically, he claims trial counsel provided ineffective assistance by: (1) failing to conduct an adequate investigation of his case; (2) failing to obtain, review, and provide complete discovery to him before advising him to plead guilty; (3) failing to inform him of the consequences of his guilty plea. The Petitioner also asserts that trial counsel's errors made his plea involuntary and unintelligent. The State responds that the Petitioner is not entitled to relief. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Id. § 40-30-110(f); see Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents a mixed question of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). This court reviews a

post-conviction court's decision involving mixed questions of law and fact de novo without a presumption of correctness. Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Calvert, 342 S.W.3d at 485). However, a post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). Appellate courts do not "re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court." Whitehead, 402 S.W.3d at 621 (citing State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001)). Generally, "appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Id. (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)).

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) this deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 369.

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Id. (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

In assessing an attorney's performance for the deficiency prong, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take

- 15 -

account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. "'However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The validity of a guilty plea is also a mixed question of law and fact, which this court reviews de novo. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010). To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Id. (quoting Grindstaff, 297 S.W.3d at 218). In making this determination, a trial court may consider a number of factors, including:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993)). A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 242-43).

**I. Investigation.** The Petitioner claims trial counsel was ineffective in failing to investigate certain aspects of his case. First, he asserts that trial counsel failed to investigate "whether a Mississippi detective could testify, what the testimony would entail, or whether such testimony would be admissible." He claims trial counsel affirmatively misinformed him that testimony from this Mississippi detective "would be presented at trial" and would be "damaging," despite the fact that the Petitioner had not yet been convicted of the Mississippi offense. Second, the Petitioner briefly claims that trial counsel pressured him to enter his guilty plea without investigating whether the cell phone, which was searched by the State, belonged to the Petitioner. Third, the Petitioner appears to argue that trial counsel coerced him to enter his guilty plea without first obtaining a presentence report, which would have disclosed whether the Petitioner "had anything in his background that

- 16 -

could harm him." Additionally, the Petitioner maintains that trial counsel's "misinformation" and failure to investigate these things rendered his plea involuntary.

Initially, we conclude the Petitioner has failed to establish he is entitled to relief on any of his claims regarding the Mississippi detective. This issue was only briefly discussed at the post-conviction hearing, where the following exchange occurred between post-conviction counsel and trial counsel:

Q. Do you recall telling [the Petitioner] that some type of DA was gonna—I mean, some type of person, Detective Cody Hamilton, was gonna come down here and testify against him from Mississippi?

A. I don't remember that. Is that my email?

Q. Well, [the Petitioner's] responding back to you about this Detective Cody [Hamilton] coming down to make a statement against him here.

A. I don't recall that. And I—I know [the prosecutor was] in communication with . . . somebody from Mississippi whether it was the DA, law enforcement, somebody."

Q. And Detective . . . Cody [Hamilton] wanted to . . . make a statement about a case that [the Petitioner] hadn't been convicted of.

A. And I—I don't remember what—what that was or if it was—if it's maybe [this detective] was gonna [sic] come down to testify at sentencing or at trial or that, I don't know.

At the post-conviction hearing, the Petitioner failed to present any proof that trial counsel told him Detective Cody Hamilton would testify against him. The Petitioner also failed to present any evidence regarding who Detective Hamilton was or what his allegedly detrimental testimony would be. Accordingly, we fully agree with the State that the Petitioner has failed to prove this factual assertion by clear and convincing evidence. See Tenn Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit, 452 S.W.3d at 786. We also conclude that the Petitioner has failed to establish that any claims regarding this detective rendered his guilty plea involuntary or unknowing.

Second, the Petitioner is not entitled to relief on his claim that trial counsel pressured him to enter his guilty plea without investigating whether the cell phone the State had

- 17 -

searched actually belonged to the Petitioner. At the post-conviction hearing, trial counsel testified that he knew the cell phone belonged to the Petitioner based on the text messages and location data showing the Petitioner had this phone in his possession prior to the offense. Trial counsel asserted that the Petitioner never denied that this phone belonged to him and never denied that he was the person using the phone and that the Petitioner understood just how damaging the data collected from his phone was. The post-conviction court, in its order denying relief, specifically found trial counsel to be "credible regarding the conversations between himself and the Petitioner." We reiterate that this court "must defer to a post-conviction court's findings with regard to witness credibility[.]" Whitehead, 402 S.W.3d at 621 (citing Momon, 18 S.W.3d at 156). Accordingly, we conclude that the Petitioner has failed to establish that any claims regarding trial counsel's handling of the cell phone rendered his guilty plea involuntary or unknowing.

Lastly, we conclude that the Petitioner is not entitled to relief on his claim that trial counsel coerced him to enter his guilty plea without obtaining a presentence report, which would have disclosed whether the Petitioner "had anything in his background that could harm him." The post-conviction court recognized that the Petitioner initially intended to proceed to trial, which would have made a presentence report unnecessary unless the jury convicted the Petitioner. The record shows that the Petitioner's case rapidly changed at the June 21, 2022 hearing, when the Petitioner was suddenly faced with his outstanding warrants and when the State provided him with a highly favorable, but quickly expiring, offer to plead guilty to the single charge of carjacking and receive a sentence of "7.2 years" at seventy-five percent as a mitigated offender, with the possibility of serving this sentence on probation. Under the particular circumstances in this case, we cannot conclude that trial counsel was deficient in not obtaining the Petitioner's presentence report before the Petitioner entered his guilty plea. Moreover, we agree with the post-conviction court that the Petitioner failed to show that any error regarding the timing of the presentence report was prejudicial because the trial court informed the Petitioner at the July 22, 2022 sentencing hearing that it would reconsider his probation request if he resolved his outstanding warrants. Because the Petitioner failed to prove trial counsel's ineffectiveness regarding his handling of the presentence report, we also conclude that the Petitioner failed to prove that trial counsel's alleged errors regarding the presentence report rendered his guilty plea involuntary or unknowing.

**II. Discovery.** The Petitioner also argues that trial counsel was ineffective in failing to obtain and share complete discovery of the data extracted from the cell phone before the Petitioner entered his guilty plea. He contends that he entered an involuntary and unknowing guilty plea because he was never informed of the State's evidence, the potential impeachment of witnesses, and his possible defenses.

At the post-conviction hearing, trial counsel acknowledged that the Petitioner may not have physically seen the complete data extraction from the cell phone. However, trial counsel testified that he informed the Petitioner about the most damaging evidence found on the phone. He said that the Petitioner never denied that the phone belonged to him or that he had been the one using the phone. Trial counsel made it clear that the Petitioner "had seen enough, and [trial counsel] had seen enough [evidence from the phone] to advise him that trial was a very, very bad idea, and [the Petitioner] understood that." The post-conviction court credited trial counsel's testimony on this point and determined that the Petitioner's claim, that trial counsel withheld evidence or discovery from the Petitioner or that trial counsel misrepresented the information obtained, was not credible. Again, we "must defer to a post-conviction court's findings with regard to witness credibility[.]" Whitehead, 402 S.W.3d at 621 (citing Momon, 18 S.W.3d at 156). Accordingly, the Petitioner failed to establish that trial counsel was deficient regarding discovery of this evidence.

Moreover, the Petitioner has not shown that he was prejudiced by trial counsel's failure to provide him with the entire data extraction from the cell phone. The proof at the post-conviction hearing established that trial counsel talked to the Petitioner about the most incriminating information on the cell phone, which was why the Petitioner decided to enter his guilty plea. Because the Petitioner did not prove that trial counsel was ineffective regarding the discovery of information on the cell phone, he has also failed to prove that any alleged error regarding this evidence rendered his guilty plea unknowing and involuntary.

**III.  Consequences of Guilty Plea.**  Lastly, the Petitioner asserts that trial counsel was ineffective in failing to inform him of the consequences of his guilty plea. Specifically, he claims trial counsel never told him that his guilty plea might not result in a probationary sentence, which prevented him weighing "the risks of trial against the true cost of the plea." He also claims that his attorney's failure to advise him of his plea's consequences prevented him from entering a knowing, voluntary, and intelligent guilty plea.

At the post-conviction hearing, trial counsel testified that he talked to the Petitioner about the consequences of entering his guilty plea. He explained that the State offered the Petitioner a very favorable plea deal that would expire quickly, and after he and the Petitioner discussed the incriminating evidence found on the Petitioner's cell phone, they agreed that the best decision was for the Petitioner to enter his guilty plea. This testimony is corroborated by the transcript from the plea submission hearing, wherein the Petitioner acknowledged that he fully discussed the plea agreement with trial counsel before deciding to enter his guilty plea. Although the Petitioner testified that trial counsel never informed him of the consequences of his plea, the post-conviction court found that trial counsel was "credible regarding the conversations between himself and the Petitioner." We reiterate

that this court "must defer to a post-conviction court's findings with regard to witness credibility[.]" Whitehead, 402 S.W.3d at 621 (citing Momon, 18 S.W.3d at 156). Accordingly, the Petitioner has failed to establish that trial counsel performed deficiently with regard to informing the Petitioner of the consequences of the plea.

Moreover, the Petitioner did not establish that he was prejudiced by trial counsel's alleged failure to discuss the consequences of the plea. The plea submission transcript shows that the Petitioner fully understood that probation was not guaranteed under his plea agreement. The trial court specifically informed the Petitioner that he would have "the opportunity to ask for a suspended sentence," although there was no guarantee that he would receive it, and the Petitioner clearly responded that he understood. In its written order denying relief, the post-conviction court found that there had been "nothing presented" at the post-conviction hearing to support the Petitioner's claim that "probation was anything more than a possibility." The record fully supports the post-conviction court's findings on this issue. Because the Petitioner has failed to show that trial counsel was ineffective in explaining the consequences of his guilty plea, he has also failed to prove that trial counsel's performance caused his guilty plea to be unknowing or involuntary.

## CONCLUSION

We affirm the judgment denying post-conviction relief.


s/ **Camille R. McMullen**
CAMILLE R. MCMULLEN, JUDGE

- 20 -